[Crim. No. 2715. Third Dist. Dec. 6, 1956.]

THE PEOPLE, Respondent, v. BILLY WILLIAMS, Appellant.

 

Robert E. Green for Appellant.

Edmund G. Brown, Attorney General, and G. A. Strader, Deputy Attorney General, for Respondent.

SCHOTTKY, J.—Billy Williams was charged by information with the crime of a violation of section 11500 of the Health and Safety Code, unlawful sale of a narcotic. He pleaded not guilty, and following a trial before the court without a jury was found guilty. His motion for a new trial and his application for probation were denied and judgment was pronounced. He has appealed from the judgment and from the order denying his motion for a new trial.

The principal contention of appellant is that the judgment and order should be reversed for the reason that the evidence discloses as a matter of law that he was the victim of an unlawful entrapment. Before discussing this contention we shall give a brief summary of the evidence as shown by the record.

A Mr. Robert Mellen, while working as an insurance adjuster in the city of Stockton, became acquainted with the narcotic traffic in that city. He reported the matter to the district attorney of San Joaquin County and was employed by the district attorney as an investigator. His instructions were to investigate the narcotic traffic in the city and to discover if possible the source of the narcotics and the persons to whom sales were being made. The purpose of his employment was not to secure evidence particularly against Billy Williams.

In order to accomplish his purpose, Mr. Mellen frequented the various places in the city of Stockton where the subject of narcotics was discussed, and particularly a place referred to in the transcript as the Lido Club. During the course of his investigation, Mr. Mellen on several occasions advanced money to the appellant, Billy Williams, upon the agreement that the appellant would supply him with marijuana.

On the evening of April 7, 1956, Mr. Mellen met the appel-

lant at the Red Rose Drive-In. At that time the appellant was with one Melvin Estrada and two young women. Mr. Mellen was in his own automobile. A conversation occurred at that time between Mr. Mellen and the appellant concerning marijuana. The appellant at that time had in his possession an envelope containing material which appeared to be marijuana, and it was agreed that the appellant would meet Mr. Mellen later at a place known as the Rolling Pin, in Stockton. Mr. Mellen later met the appellant at the Rolling Pin at approximately 1 or 2 a. m. He observed the appellant drive up and stop in front of the Rolling Pin and saw the appellant and Melvin Estrada leave their automobile and place something behind a barber pole. Mr. Mellen was later informed by the appellant that this was their "stash." The appellant, Mr. Estrada and Mr. Mellen then entered the Rolling Pin, secured a booth in a small room adjoining the soda fountain. Two young women and a Tom Sims were also present. They discussed the subject of marijuana, the appellant stating that he had marijuana with him and that he would take the same into the men's room and roll some cigarettes. The appellant then left with Mr. Estrada and went into the men's room and returned shortly when a Negro sailor walked into the men's room. Appellant said that he had been upset because he did not know who walked into the men's room as he and Mr. Estrada were in the process of rolling the cigarettes. As soon as the Negro sailor was seen to leave, appellant returned to the men's room where he remained approximately three or four minutes. The appellant then returned to the booth where Mr. Estrada and Mr. Mellen were sitting and handed Mr. Mellen two cigarettes. These cigarettes were retained by Mr. Mellen and delivered to a police officer who in turn delivered them to the State Bureau of Criminal Identification and Investigation. They were identified by a chemist as containing marijuana and introduced at the trial as People's Exhibit No. 1.

At the time of the delivery of the cigarettes to Mr. Mellen the appellant stated that they were in part payment of money previously advanced for the purpose of securing marijuana. Mr. Mellen had previously advanced money to the appellant for the agreed purpose of enabling the appellant to secure a quantity of marijuana on one of his "trips" south. Mr. Mellen had previously purchased narcotics from the appellant on March 31, 1956.

Appellant argues that the long length of time that the

agent spent on appellant, the number of their meetings, the buying of drinks, the introduction to an attorney and the advancement of money all show a calculated course of unlawful inducement by a paid agent to secure the commission of a crime. Appellant also urges that appellant was under some pressure from the agent because appellant had gotten into his debt. Appellant argues that in view of this combination of persuasion, inducement and pressure, it cannot be said that this was an ordinary transaction between a willing buyer and a willing seller.

Appellant relies strongly upon the case of *Lutfy* v. *United States* (C.A. 9th), 198 F.2d 760 [33 A.L.R.2d 879], in which the defendant testified that a special employee of the Federal Bureau of Narcotics struck up an acquaintance with the defendant and became his friend and drinking companion. He then induced defendant to procure narcotics for a friend. Defendant further testified that prior to these incidents, he had never engaged in the narcotic traffic; that he had no intention of selling narcotics and that he procured the narcotics only because of the urging of the agent. In reversing the judgment for failure to instruct on the doctrine of entrapment, the court stated, at page 762:

". . . Taken as true, it [defendant's testimony] is sufficient to establish the defense of entrapment. It does not show the permissible actions of enforcement officers in merely offering an opportunity to commit a criminal offense to one already engaged in a course of similar criminal conduct, or to one who has the intent or is willing to commit such an offense. Appellant's testimony portrays, rather, the conception of the criminal design and the planning of the offense by the enforcement officers, the formation of the intent in their minds, and the procurement, by misrepresentation and deceit, of its commission by appellant, an otherwise law-abiding, innocent person, who had no intent to commit the offense and no disposition to commit it until he was induced to do so by the enforcement officers. On such a showing, appellant was entitled to have the jury properly instructed on the law covering his defense of entrapment."

While there is some similarity between the factual situation in the instant case and the factual situation in the case cited by appellant, the holding of the cited case was merely that the defendant was entitled to have the jury instructed as to the law of entrapment. There was no jury in the instant case and there is nothing in the cited case to support appellant's

contention that entrapment was establishment as a matter of law.

As stated in *People* v. *Lindsey*, 91 Cal.App.2d 914, at page 916 [205 P.2d 1114]:

"Entrapment is the conception and planning of an offense by an officer and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer. Persuasion or allurement must be used to entrap. (*People* v. *Hall*, 133 Cal.App. 40, 45 [23 P.2d 783].) The officer must induce the defendant to commit a crime which he would not have committed without such inducement. (*People* v. *Makovsky*, 3 Cal.2d 366, 369 [44 P.2d 536].) It is not the entrapping of a criminal that the law frowns upon but the the seduction of innocent persons into a criminal career by its officers. (*United States* v. *Wray*, 8 F.2d 429, 430.)"

In *People* v. *Schwartz*, 109 Cal.App.2d 450, the court stated at page 455 [240 P.2d 1024]:

"It is not the entrapment of a criminal upon which the law frowns, but the seduction of innocent people into a criminal career by its officers is what is condemned and will not be tolerated."

The use by state officers of a decoy, informer or undercover operator as in the present case to secure evidence and provide an opportunity for one to commit a criminal offense does not of itself constitute entrapment. (*People* v. *Nunn*, 46 Cal.2d 460 [296 P.2d 813].)

The traffic in narcotics is an activity which is pursued in a highly secretive manner. Sellers are undoubtedly very suspicious of the persons to whom they sell. An undercover operator must of necessity work carefully over a long period of time to gain the confidence of those engaged in the traffic and be "accepted" by them. The evidence in the present case shows that Mr. Mellen did just that. He frequented the Lido Club in Stockton where the subject of narcotics was habitually discussed.

It is conceded by appellant that the defense of entrapment is an affirmative defense imposing upon the accused the burden of proof. (*People* v. *Lee*, 9 Cal.App.2d 99 [48 P.2d 1003].)

The Supreme Court reiterated the rule in *People* v. *Braddock*, 41 Cal.2d 794, stating as follows, at page 803 [264 P.2d 521]:

"Entrapment 'is a positive defense imposing upon an accused the burden of showing that he was induced to commit

the act for which he is on trial' (*People* v. *Schwartz, supra,* at p. 455; *People* v. *Grijalva,* 48 Cal.App.2d 690, 694 [121 P.2d 32]; *People* v. *Lee,* 9 Cal.App.2d 99, 109 [48 P.2d 1003])."

The court in the last cited case also held that with respect to the special defense of entrapment, the often repeated rule applies that on appeal the evidence is to be construed most favorably to the respondent. The court in the Braddock case further stated as follows at page 803:

". . . Where the record shows a conflict in the evidence, the judgment will not be reversed. (*People* v. *Crawford,* 105 Cal.App.2d 530, 537 [234 P.2d 181].)"

See also *People* v. *Terry,* 44 Cal.2d 371 [282 P.2d 19]; *People* v. *Nunn,* 46 Cal.2d 460 [296 P.2d 813].

In the present case the trial court was not required to believe the testimony of the appellant. The trial court had the opportunity, not available to this court, of observing the witnesses, their demeanor and manner of testifying. Obviously the court rejected the testimony of the appellant and accepted that of Mr. Mellen together with other evidence and circumstances which rebut the defense of entrapment. We are satisfied that there is ample evidence to support the implied finding of the trial court that the defense of entrapment had not been established.

Appellant contends further that the prosecution failed to prove that appellant was ready and willing to make the alleged sale without inducement, and also that there was no proof that a sale was made, but as to these contentions it is clear that there is a conflict in the evidence. The court was not compelled to believe the statements of appellant and we are convinced that there is ample support in the evidence for the conclusion that appellant not only made a sale of narcotics but also that he was ready and willing to make it without inducement.

No other points raised require discussion.

The judgment and order are affirmed.

Van Dyke, P. J., and Peek, J., concurred.